IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRELL ELEY, | : | Civil No. 1:21-CV-02184 |
| Plaintiff, | : | |
| v. | : | |
| SUPERINTENDENT BRITTAIN, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Plaintiff's complaint raises claims under 42 U.S.C. § 1983 against Defendants alleging that his First Amendment and Fourteenth Amendment due process rights were violated when he was placed in the restrictive housing unit (RHU) on November 5, 2021 and was not promptly served with documents under the Department of Corrections policy.  (Doc. 1.)  Defendants filed a joint for summary judgment and motion to dismiss the complaint premised on Plaintiff's failure to exhaust his administrative remedies, and asserting that Plaintiff had received all the due process rights he was owed in the administrative process. (Docs. 21, 25.)  The court will deny Defendant's motion for summary judgment.  However, the court will grant the motion to dismiss the complaint.  Plaintiff will be given leave to file an amended complaint.

1

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 in December of 2021. (Doc. 1.) He brought First and Fourteenth Amendment claims against three defendants: (1) K. Brittain ("Brittain"), superintendent at SCI-Frackville; (2) S. Kephart ("Kephart"), Deputy DSCS at SCI-Frackville; and (3) N. Wynder ("Wynder"), Deputy DSFM at SCI-Frackville. (*Id.*, p. 2.)[1] Defendants waived service in June of 2022, Doc. 20, and filed a joint motion for summary judgment and motion to dismiss the complaint on July 5, 2022, Doc. 21. Defendants filed their brief in support on August 18, 2022. (Doc. 25.) Plaintiff filed his brief in opposition on October 11, 2022. (Doc. 28.) Defendants did not file a reply. The joint motion for summary judgment and motion to dismiss the complaint is now ripe and will be addressed by the court.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at State Correctional Institute Frackville ("SCI-Frackville"),

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

located in Schuylkill County, Pennsylvania, which is located within this district. *See* 28 U.S.C. § 118(b).

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the

court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## MOTION TO DISMISS STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015). Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014); *see also Phillips*, 515 F.3d at 245. A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly

dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

## DISCUSSION

### A. Facts Alleged in the Complaint

In his complaint, Plaintiff alleges that on November 5, 2021, he was placed in the RHU on Administrative Custody ("AC") under investigation status at SCI-Frackville. (Doc. 1, p. 2.) He alleges that DC-ADM 802 requires that he be served an "802 form" within 24 hours, and he was not served the "802 form" until 80 hours into his AC detention. (*Id.*, pp. 2–3.) Plaintiff alleges that this is a violation of his Fourteenth Amendment rights. (*Id.*, p. 3.) He alleges that he then wrote to the Prison Review Committee ("PRC") to appeal the AC status based on the violation of DC-ADM policy on November 6, 2021. (*Id.*; Doc. 1-1, p. 1) He alleges that his appeal was never answered, and this violated his First Amendment Rights. (Doc. 1, p. 3.) He then alleges that he wrote Defendant Brittain to appeal the AC status based on the violation of DC-ADM policy on November 10, 2021. (*Id.*; Doc. 1-1, p. 1.) He states that Defendant Brittain did not answer his appeal. (Doc. 1-1, p. 1.) He further alleges that he wrote the PRC multiple request slips on the matter, which went unanswered. (*Id.*) Plaintiff alleges that he filed a grievance on November 9, 2021, which was denied. (*Id.*) He states that he appealed the

grievance denial to Defendant Brittain, and it was denied. (*Id.*) Plaintiff states that he then appealed it to the central office, and never received an answer. (*Id.*)

Plaintiff alleges that it is 802 policy that after 15 days of an investigation, he was to be given an 802 extension form, a "DC 141 write up," or he is to be released from the RHU. (*Id.*) At the time of Plaintiff writing the complaint, he alleges he had been in AC detention for 38 days and he had not received an 802 extension form or been released. (*Id.*) He alleges this is a violation of his Fourteenth Amendment due process rights. (*Id.*) Plaintiff alleges that he filed a second grievance on December 6, 2021, but it was denied requiring that it be addressed under 802 policy. (*Id.*) He asserts that he did attempt to address his complaints through the 802 policy and the PRC, which is comprised of Defendants Kephart and Wynder, but his requests went unanswered. (*Id.*)

Attached to the complaint are three DC-135A forms: (1) November 21, 2021 addressed to Defendant Brittain, Doc. 1-2; (2) December 7, 2021 addressed to Defendant Kephart, Doc. 1-3; and (3) December 6, 2021 addressed to Defendant Brittain, Doc. 1-4.

**B. Defendants' Motion for Summary Judgment Will Be Denied.**

Initially, Defendants seek summary judgment on the theory that Plaintiff failed to exhaust his administrative remedies. (Doc. 25, pp. 6–10.)

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*, requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation omitted) (quoting *Woodford*, 548 U.S. at 88)). "[C]ompliance with the administrative remedy scheme" means "substantial" compliance with the prison's grievance procedures. *See Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004) (citing *Nyhuis v. Reno*, 204 F.3d 65, 77–78) (3d Cir. 2000). Failure to exhaust available administrative remedies is an affirmative defense. *Ray v. Kertes*, 285 F.3d 287, 292 (3d Cir. 2002).

The DOC has three (3) different administrative remedy processes which collectively provide an inmate a route to challenge every aspect of confinement. *See Fortune v. Bitner*, 2006 WL 2796158, at *7 (M.D. Pa. Sep. 25, 2006), aff'd, 285 F. App'x 947 (3d Cir. 2008). Those policies are: (1) the Inmate Grievance

9

Policy, DC-ADM 804; (2) the Inmate Discipline Policy, DC-ADM 801; and (3) the Administrative Custody policy, DC-ADM 802. *See* Pa. Dep't Of Corr., Policies, https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx (last visited February 18, 2023). The three (3) programs address specific issues which may arise within the prison, and one administrative remedy may not be substituted for the other. *Fortune*, 2006 WL 2796158, at *7.

At issues in this action is whether or not Plaintiff properly exhausted his remedies under DC-ADM 802. (Doc. 1.) The court notes that DC-ADM 802 was amended on April 18, 2022. *See* Pa. Dep't of Corr., Policy No. DC-ADM 802, Administrative Custody Procedures (Apr. 18, 2022), *available at* https://www.cor.pa.gov/About% 20Us/Documents/DOC% 20Policies/802% 20Administrative%20Custody% 20Procedures.pdf (last accessed February 18, 2023). Therefore, the court must look to the prior version of the DC-ADM 802 that was in effect in November of 2021, when Plaintiff asserts his constitutional rights were violated.

An excerpt from this prior version was attached to Plaintiff's complaint, and the full text was attached to Defendants' motion. (Doc. 1-5; Doc. 25-1, pp. 11–33.) The issuance and effective dates found on the lower left corners of the pages submitted to the court by each party are consistent. (Doc. 1-5; Doc. 25-1, pp. 20–21.) Therefore, the court concludes that the parties are in agreement on which

10

version of DC-ADM 802 applies to the instant action, and takes judicial notice of this policy. *See Booze v. Wetzel*, No. 1:CV-13-cv-2139, 2014 WL 65283, at *2 (M.D. Pa. Jan. 8, 2014) (taking judicial notice of DC-ADM 802).

The version of DC-ADM 802 that was in effect in November of 2021 makes clear that all issues concerning the reason for an inmate's placement in AC or the duration of his custody must be addressed through the procedures set forth DC-ADM 802, and specifically excludes relief through DC-ADM 801 and DC-ADM 804. (Doc. 25-1, p. 26); DC-ADM 802 § 2(D)(11) (Nov. 14, 2016). It sets forth the following requirements:

> An inmate is required to raise any issue concerning ***the reason for or*** the duration of his/her AC custody during the regularly scheduled PRC review. The PRC's decision may be appealed through the procedures set forth in **Subsection C. above**. Issues concerning the failure of the PRC to conduct a timely initial AC placement hearing or a regularly scheduled review may be appealed to the Facility Manager and then to the Chief Hearing Examiner under the procedures set forth in **Subsection C. above**. The granting or denial of privileges may not be appealed.

*Id*. (emphasis in original). Subsection C states that "[a]n inmate may appeal the decision of the PRC concerning his/her initial confinement in AC to the Facility Manager/designee within two work days of the completion of the hearing," and "may appeal the initial decision of the Facility Manager/designee to the Office of the Chief Hearing Examiner" within seven calendar days of the receipt of the

11

Facility Manager's/designee's decision.  (Doc. 25-1, p. 24); DC-ADM 802 § 2(C) (Nov. 14, 2016).

Defendants seek summary judgment by asserting that Plaintiff failed to exhaust his administrative remedies in accord with DC-ADM 802 policies, and instead continued to attempt administrative remedies through DC-ADM 804. (Doc. 25, pp. 6–10.)  However, all of the deadlines set forth in subsection C of DC-ADM 802 are triggered by the holding of a hearing.  Neither party has alleged that such a hearing was held.

The court notes that DC-ADM 802 limits being held in AC status for investigative purposes, as in this case, for fifteen calendar days with only one fifteen-day extension allowed if the investigation has not been completed.  In that case, the reason for the continuation must be documented and a copy of such documentation must be provided to the inmate.  (Doc. 25-1, p. 22); DC-ADM 802 § 2(A)(4) (Nov. 14, 2016).  At the end of this maximum thirty-day investigation period, if the inmate remains in AC status, he must be charged with a misconduct and a hearing must be held within seven work days.  (Doc. 25-1, pp. 22–23); DC-ADM 802 § 2(A)(4) (Nov. 14, 2016).  Therefore, in Plaintiff's situation of being held under investigative status and no hearing being held, DC-ADM 802 provides no administrative process to seek redress of the due process violations he alleges.

Defendants have failed to provide evidence that any hearing was held triggering the available paths of redress they claim Plaintiff failed to exhaust. Therefore, the court finds that Defendants have failed to demonstrate that Plaintiff has failed to satisfy the administrative exhaustion requirement. Here, it appears that DC-ADM 802 failed to provide Plaintiff any means to exhaust his remedies before proceeding with the instant action. At the time the complaint was filed, Plaintiff alleged that he had been in AC for 38 days without a hearing. Therefore, the DC-ADM 802 § 2(C) steps for redress had not been triggered. Therefore, Defendants' motion for summary judgment will be denied.

The exhaustion of administrative remedies is not a pleading requirement, but an affirmative defense that must be pleaded and proven by Defendants. *Ray*, 285 F.3d at 292–94. Defendants have failed to prove this affirmative defense at this time. *See supra*. Therefore, the court will proceed in considering Defendants' motion to dismiss.

**C. Defendants' Motion to Dismiss Will Be Granted Without Prejudice.**

The crux of Plaintiff's complaint is his claim that he was denied due process of law in violation of the Fourteenth Amendment in the course of his detainment in AC. (Doc. 1.) The Fourteenth Amendment provides, in pertinent part, that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" *See* U.S. Const. amend. XIV. With respect to a procedural due process

claim, the court observes that "'[a] liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies.'" *Porter v. Pennsylvania Department of Corrections*, 974 F.3d 431, 437–38 (3d Cir. 2000) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (alteration added)).  The United States Court of Appeals for the Third Circuit has explained:

> Procedural due process rights are [only] triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.E.2d 418 (1995). In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement; and (2) whether the conditions of confinement were significantly more restrictive than those imposed upon other inmates in solitary confinement. *See id*. at 468, 115 S.Ct. 2293; *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000).

*Huertas v. Sec'y of Pa. Dep't of Corr*., 533 F. App'x 64, 66 (3d Cir. 2013).

Applying these benchmarks, it has been held that detention in administrative custody for a brief periods of six months or less does not impose the type of atypical and significant hardships on inmates which trigger due process protections.  *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (seven months in disciplinary confinement did not implicate a liberty interest); *Torres v. Fauver*, 292 F.3d 141, 151–52 (3d Cir. 2002) (disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate a protected liberty

interest). However, prison disciplinary proceedings may constitute a denial of due process in the context of a civil rights action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his exercise of a constitutional right. In *Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000), The Third Circuit stated the following:

> *Sandin* instructs that placement in administrative confinement will generally not create a liberty interest. Retaliation may be actionable, however, even when the retaliatory action does not involve a liberty interest. [G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.

*Seiverling,* 229 F.3d at 224 (internal citations and quotation marks omitted).

Based on the foregoing, Plaintiff's allegations do not trigger due process protections because being held in AC for such a short period does not impose atypical and significant hardship under *Sandin*. Therefore, the motion to dismiss will be granted. However, Plaintiff also alleges a First Amendment violation. (Doc. 1.) The court acknowledges that Plaintiff fails to allege any elements consistent with a First Amendment retaliation claim[2], and simply refers to the First Amendment in his complaint. (*Id.*) However, in light of the potential for a First

---

[2] A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

15

Amendment retaliation claim to be brought in conjunction with due process claims as set forth in *Seiverling*, the court will grant Plaintiff leave to amend his complaint.

## CONCLUSION

For the foregoing reasons, Defendants' joint motion for summary judgment and to dismiss the complaint will be denied in part and granted in part. Defendants' motion for summary judgment will be denied, and his motion to dismiss will be granted. The complaint will be dismissed without prejudice.

Before dismissing a civil rights complaint, a district court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245. Plaintiff will be granted leave to file an amended complaint, but he must clearly label the document as his amended complaint and use the docket number assigned to this case. Should Plaintiff fail to timely file an amended complaint within thirty days, the case will be closed.

An appropriate order follows.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Court Judge<br>
Middle District of Pennsylvania

Dated:  February 21, 2022